**COLLINGBOURNE MILLS, Inc., v. CLARK THREAD CO.**

No. 4605.

Circuit Court of Appeals, Seventh Circuit.

April 13, 1932.

Bertha L. McGregor, of Chicago, Ill., for appellant.

Wallace R. Lane and Clarence J. Loftus, both of Chicago, Ill. (George F. Scull, of New York City, of counsel), for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree finding valid and infringed United States patent No. 1,-224,977, May 8, 1917, to Ulmann, for a "Device for Winding Yarn and the like," and divisional patent No. 1,258,380 for an "Improvement in Packages of Yarn and the like," March 5, 1918 (original application July 6, 1915).

Claims 1, 2, 7, and 8 of the first named patent and claims 1 and 3 of the second are in issue. Typical claim 2 of the first, and claims 1 and 3 of the second, patent appear in the margin.[1]

The first patent covers a spindle so constructed as to wind a ball of yarn, which, when wound, will have a hollow tubular interior, supported against collapse by a tubular core, with the yarn of the completed ball overlapping considerably both ends of the tubular interior and core.

If the spindle were solid and shaped to fit into and fill the core, the ball so wound could not be withdrawn therefrom without disturbing the overlapping yarn at one of the ends. Ulmann's spindle provides a series of opposed spring-actuated fingers which normally project radially from the spindle to contact with the inner surface of a cardboard core of substantially larger diameter than the spindle itself. The normally extended fingers engage and frictionally hold the

---

[1] Claim 2. "The combination of a carrier, a tubular core surrounding said carrier and spaced therefrom, a plurality of fingers pivotally connected with said carrier and located in pairs at a distance from each other lengthwise of said carrier, said fingers normally projecting in a radial direction beyond said carrier into contact with the inner surface of said core whereby the latter is supported in spaced relation to said carrier, said fingers being movable to inoperative positions entirely within the periphery of said carrier whereby said core and a ball of yarn or the like wound thereon and over its ends may be removed from said carrier and yielding means for maintaining said fingers in their normal positions and arranged to yield as said fingers are moved to their inoperative positions."

Claim 1. "The combination of a tubular core having substantially the same internal diameter throughout its length, and a ball of yarn or the like initially wound to overlap both ends of said core to a considerable extent."

Claim 3. "A package of yarn or the like comprising a ball initially wound to form a hollow interior and opposite end portions inwardly overhanging said hollow interior and forming reduced end openings, and means for maintaining said ball against collapsing."

inner surface of the core, and the winding proceeds, the yarn extending inwardly as far, if desired, as the shaft of the spindle itself. The wound ball is withdrawn by the retraction of the spindle fingers, enabling the overhanging part of the ball to pass from the spindle and another core to be passed over the fingers and frictionally held by them ready for the winding of another ball.

Appellant's main contention is that prior to Ulmann's invention date of the first patent appellant invented and was using devices from which the Ulmann device is not patentably distinguishable. The record discloses that about or shortly prior to Ulmann's invention persons on appellant's behalf were working on the problem, and had evolved several devices, none of which, prior to Ulmann, appear to have succeeded in producing a spindle which could be readily withdrawn from the completed ball without frequent injury to the ball itself.

Without undertaking to describe the various steps toward achievement of the desired result, we deem it sufficient to say that we agree with the District Court in its conclusion that before Ulmann's invention date the problem had not progressed beyond the experimental stage, and we further agree that in any event the evidence relied upon to establish this alleged prior use of the device did not establish it with that degree of certainty which the law requires to warrant the striking down of a patent.

In further support of the defense of invalidity of the first patent a number of prior art patents are cited, mainly: No. 80,481 (1868) to Holmes, for a machine for crozing and howeling barrels; No. 465,075 (1891) to Grantland, for an expanding mandrel; No. 855,604 (1907) to Aylsworth and Dyer, for a device for holding cylindrical phonograph records; No. 926,715 (1909) to Brooks, for a paper winding mechanism—all of which show expanding and contracting means whereby, when expanded from a revolvable shaft to which they are adapted, they hold the barrel, metal tube, or the like. phonograph record, or roll of paper by frictional engagement against their inner surfaces with the outer surfaces of the expanded parts, until it is desired to remove these articles, whereupon the movable parts are contracted and the articles removed. The problem as to these is quite different from that with which Ulmann's patent deals. His device had to be so arranged as to hold the core of the ball in such relation so that the yarn could overlap at both ends for the distance between the core and the spindle. This was not the problem with these other inventions, wherein the retraction of the moving parts had to be merely sufficient to release the frictional engagement.

The contention that appellant's alleged infringing device is the embodiment of the Palmgren patent, No. 1,316,638 (1919) which, it is contended, does not infringe, is without merit. The Palmgren device, instead of having the Ulmann expanding fingers which contract against the spindle, has solid blades which are contracted into slots in the spindle. This does not distinguish patentably from Ulmann's. It is possibly an improvement, but it embodies the Ulmann fingers and falls fairly within Ulmann's range of equivalents.

We are satisfied that upon this record the District Court did not err in holding valid and infringed the claims in issue of the first Ulmann patent.

■ To sustain the decree respecting the claims of the patent for the balls, it must appear that the balls themselves were Ulmann's invention. From our perusal of the record, we are satisfied that this does not appear. The conception of such balls necessarily preceded the efforts to evolve a machine whereby they were successfully wound. We think the record sufficiently discloses that appellant, or those employed by it, did have such conception of these balls before Ulmann's invention date. Their difficulty was not with the balls themselves, but with a device which would practically and profitably produce them.

The conception of the balls themselves bears no necessary relation to the conception of a machine for successfully manufacturing them. The balls, once conceived, might be wound by hand, but this would not have been commercially profitable. Before the invention date both parties sought to wind such balls by a device they call a "stab spindle." Appellant's was triangular in cross section and pointed; appellee's was square. In each the cardboard core was tubular, having in one or both ends a cardboard disc, much like a round, deep pill-box. The spindle was "stabbed" through the center of the end or ends, and the core was thus spaced and held a considerable distance from the spindle. The winding proceeded, and was so done that the yarn overlapped considerably both ends of the core. When the ball was wound, it was drawn from the spindle, and there was then a ball with cylindrical core, with yarn projecting considerably over the ends of the core, leaving such a hollow ball as is

described in Ulmann's patent.

This was a rather crude way to equip the spindle for such winding, in that the position of the core relative to the spindle was easily disturbed by slight pressure, or the spindle might not penetrate at the center of the closed end or ends of the core, thus resulting in many irregularly shaped and often valueless balls. There was also much trouble in retaining the discs in the ends of the core. It was this unreliability in the operation of the stab spindle which induced the quest for a more substantial and workable device, resulting ultimately in Ulmann's device patent. But, regardless of whether the device to produce the ball was successful or unsuccessful, or of how many cores or balls were damaged or spoiled in production, it seems apparent to us that the actual conception and invention of the ball preceded Ulmann's invention date of this patent. The fact that the earlier core had one or both ends closed does not distinguish it from the ball of the patent. The tubular core is none the less such whether the ends are open or closed. Appellee's briefs and arguments concede appellant's right to use the stab spindle in connection with such cores; but the cores, in connection with the stab spindle, would have no other utility than for winding a ball and overlapping the ends. Straight winding without the overlapping could be readily done on a solid spindle, and this was very old in the art. The right to employ the stab spindle with such core implies the right to make the article for which only the stab spindle and core had utility, so far as the record shows.

Specifications of British letters patent to Amies, 1855, show such a pill-box core for winding balls thereon. Figure 5 shows the overlapping of the yarn on one end of the core, and figure 6 on possibly both ends. We are not certain, however, from these drawings, whether or not the core fitted closely over the spindle. If it did, the yarn could not, at least at one of the ends, extend substantially inward over the end of the core. The claimed novelty was the use of the tubular core and of certain novel· motions in the winding. While we would not regard the disclosure of the British patent as sufficiently clear to constitute anticipation, we are satisfied from what has been above pointed out that Ulmann was not the inventor of the ball described in claims 1 and 3 of this patent.

In this view of the second patent, we need not consider appellant's contention that the article lacks utility, in that it has no purpose or advantage save to deceive the public into believing that it contains more yarn than it really does.

As to the claims in issue of patent No. 1,224,977, the decree of the District Court is affirmed.

As to the claims in issue of patent No. 1,258,380, the decree of the District Court is reversed, with direction to dismiss the bill for want of equity ·as to this patent.

Each party shall pay one-half of the costs of this appeal.